Good morning, and if it pleases the Court, Robert Chekatov for Petitioner-Appellate Keith Winfield, and I'd like to reserve one minute for rebuttal. Thank you. In the morning of October 13, 2005, the mother of this toddler brought the child to her sister's home, and the defendant is the sister's husband, left the child with the sister and her two children. Later in the afternoon, the grandmother, the mother of the two sisters, picked up the child, and the child was displaying signs of injury at that time. Mr. Winfield took the position at the motion for required finding, which is what we call judgment of acquittal in state court, and on appeal to the Appeals Court of Massachusetts, that there were two candidates for the perpetrator of this incident, his wife and himself, and that there was nothing in the record to distinguish between the two, and therefore the motion for judgment of acquittal or required finding of not guilty should have been granted. The idea being that if the proposition is 50-50, that's not proof beyond a reasonable doubt, and it could not be an objectively reasonable decision or application of the due process requirement to say that a 50-50 shot is good enough. Now, I've been doing this a long time. Were you the trial counsel in this case? I was not. Did you handle any of the appeals? I handled the appeal to the Appeals Court of Massachusetts and the application for further appellate review, which was denied by the Supreme Judicial Court. Got it. Thanks. I've been doing this for a long time, and I have handled hundreds of criminal appeals, many in this court. And I have lost for a variety of reasons. In fact, I almost always lose. I mean, that's the nature of representing criminal defendants. When you look at the statistics of what the Massachusetts state courts reverse and you look at the statistics of what this court reverses, you understand the life that I lead. And I disagree with many opinions that I have to suffer the consequences for, but rarely am I shocked and appalled by a decision, because rarely does the factual record get so distorted by an appellate court that I don't recognize it. And there is a central thesis in the appeals court's decision, and it goes like this, and this is a quote. Therefore, the defendant was the only adult who had access to the victim during the time span in which the injuries occurred. That is an indefensible misrepresentation at best. If it were true, I lose. There's no question about it. But it's completely indefensible, completely. It was not argued below by the prosecutor. No, at the sentencing hearing, the trial judge, disturbed by this issue, asked for her best suggestion of why the evidence pointed more strongly to the husband rather than the wife. She didn't say this, because it's completely indefensible. The appeals court says it's based on two propositions. One, that the medical evidence shows that the injuries occurred after midday on October 13th of 2005. The medical evidence does not show that. The medical evidence, as I argue in my brief, shows unequivocally that the injuries occurred, the medical evidence now, sometime between 1 o'clock on March 12th, I'm sorry, October 12th of 2005, and midnight or so on October 13th of 2005. The doctor who was uncontested in this case testified that the skull injury and the burning injuries occurred at the same time, most likely occurred at the same time. And she put a three-day window, a two- to three-day window on the skull injury and a 24- to 36-hour window on the burning injuries. So the medical evidence does not show this. This is just a made-up fact. Mr. Sherkatov, here's where, I mean, you make a good point regarding the weakness of the overall evidence, but under the standard that we have here on this habeas review, what do we do with the line of reasoning that says the mother's testimony and the grandmother's testimony bracket the time period during which the child was on the 13th at the house of her sister? Right. I agree with that completely. So we've narrowed it down to a window of time when the injury occurred, and then we've got the argument that it's either the petitioner or his wife. Correct. And then we've got the evidence that only the petitioner was alone in the house with the child at any point during the death. For 45 minutes, correct. Yes. And then we've got the testimony that the nature of these injuries would likely have incited noise, screams and the like. Correct. Under the standard review that we have, even if that might not convince us if we were a jury, why is that not enough? Because the child had injuries to her skull and bruises along her face. One has to presume that whoever did this would not attempt to muffle the cries. In other words, that is the central thesis in order to say it was the defendant. This had to be done alone. Why? Let me be straight. I mean, I don't think the claim is that it had to be done alone. It isn't a claim that it is reasonable for a jury to find that it was done alone. And I would say no, it's not reasonable, because one would have to presume that the perpetrator would not try and muffle the cries. This was a multifamily home. We have no evidence in the record about how large the home is. The uncontroverted testimony was that the defendant was asleep until 11 o'clock in the morning. The injuries are consistent with someone trying to muffle the screams, assuming there would be. So it's total conjecture to suggest, well, this was done when no one else was in the house, versus this was done by somebody who decided to muffle the noise. They're both equally consistent propositions, both equally available with means of accomplishing the same task. And I don't know how you pick one over the other without complete guesswork. The appeals court also points to the implement that was used, which is consistent with a curling iron, and says that that points to the defendant more than the wife. I don't understand how that's possibly correct. What about the phone call? Well, the phone. Where the child was uncommunicative. A three-year-old is uncommunicative. But what does that say about when the injury occurred? As I understand it, the phone call was made while the sister was away from the house at Dunkin' Donuts. Right, but under my theory, the injury most likely occurred in the morning before the client woke up. But at that point, the mother asked to speak to the three-year-old. Right. And the three-year-old, in response to hearing her mother on the phone, makes no sounds at all. The mother's unable to coax any sounds out. Right, and then she has to hang up because her time is up. So it's not clear how much time was involved. This is a three-year-old, and maybe she was injured at that point in time. And under the prosecution's theory, in fact, that's when the injuries were occurring. Correct. She'd be screaming then. Who knows? I mean, to me, this is a black box. And even though I reserve, can I say one thing about my issue number two? And you can decide. We don't decide whether or not you can impeach by bias by having an evidentiary hearing where the trial judge decides whether or not he or she concludes that there was actual bias. And if he or she concludes that there wasn't, we don't let the jury hear about it. Thank you. Good morning, Your Honors. May it please the court, Chris Foster for the respondent. The petitioner here is asking this court to do what the appeals court properly refused to do, and that is he's asking you to look at the evidence in the light most favorable to him rather than the verdict to find the trial evidence equally inculpating his wife in the attack on October 13th. Of course, this is the opposite standard that the court should be using, and the appeals court reasonably applied the correct standard and determined that the evidence was sufficient to find that the petitioner and not the wife had both the motive and opportunity to commit these assaults. So there's no dispute as to what kind of injuries the victim had. The only issue from trial through appeal and now in habeas review is the identity of the attacker, and here the petitioner had an opportunity that his wife did not have. Dr. Newton testified that the injuries occurred slightly after midday on October 13th, and that all the injuries likely happened at the same time. This includes the burns, the skull fracture, and all the bruising. And the victim, at least looking light most favorable to the verdict, the victim had not been injured when she was dropped off on the morning of October 13th, but then had been injured sometime in that period when her grandmother picked her up at the end of the day. What do you say to the argument that the state appeals court demonstrably misunderstood the medical testimony when it said that the medical testimony placed the child alone with the husband when the incident occurred? And in fact, it didn't, did it? Well, Dr. Newton gave a range for each. And there were at least several people who had access to the child during that range. The only people who had access to the victim during this range were the petitioner and his wife. And isn't that different than what the Massachusetts appeals court said? I disagree, because also since we're looking at this in the light most favorable to the verdict and taking the reasonable inferences, Dr. Newton testified that the burns would have occurred between noon and midnight on October 13th. And there were four people who had access to the child during that range. Correct. So if we start at noon, by the time the victim is picked up from the petitioner's house, she has already been injured. But now you're moving away from the medical testimony. Correct. But we also have the fact that the skull fracture happened sometime after 1 p.m. on October 2nd, and the bruises on her face and chest were at least 18 hours old. So the best you can do, if you take all that, is you can narrow it down to two people who had access during the time when the injury occurred. Based on the medical evidence. But then we also have the fact that the petitioner was alone with the victim during the day. He admitted that no one else had access to the house, adults other than him and his wife, that his wife did leave either 11.30 or 12.30 and was gone for a period of time. Then we also have the victim's mother's phone calls, where she established that the petitioner was alone with the victim. And as has already been pointed out in my brother's argument, the victim, Dr. Newton, testified that the victim would have been crying and screaming more than a normal 23-month-old would, that these would have been excruciating, painful injuries, and she would have been screaming loudly. And so the only reasonable inference I think you can draw from that is the petitioner was the only one there. Well, there's another way to look at that. It seems to me that at least the first two of those three factors might suggest that it's more likely than not that it was the defendant. But how do you exclude the wife beyond a reasonable doubt? What's the evidence that excludes the wife beyond a reasonable doubt, if you've narrowed it down to two, which we have in our discussion? Well, we have Dr. Newton's testimony that the screaming would have been unnaturally loud and indicating pain more than a normal child, such that if someone else in the house had been there, they would have responded or heard this crying. We also have the fact that the petitioner and the petitioner alone, it might not reach the point of motive, but the Commonwealth did establish the hostility that he had for the victim that his wife did not have. The petitioner, and his audio recording was played for the jury so they were able to hear his demeanor, stated that, quote, that he would, quote, would have never, ever, ever, ever wanted to take on another child. He also told officers that he didn't like the victim's mother, that he thought they were taking advantage of him. On the other hand, his wife, through the grandmother and through the victim's mother, they testified that there was a good relationship between the sisters. Even the petitioner himself said their relationship had improved. And we have here the petitioner, this child was kind of forced on him for daycare purposes, where his wife actually had entered into agreement to get paid. So I think you have this opportunity where he's the only person alone with the victim for the entire time span. And then you also have his motivation of hostility towards the child and taking care of someone else's child. And then to just briefly touch on the second issue, after the voir dire, the judge determined that there was no bias, so there was nothing to cross-examine the victim's mother on, she had made several statements over the course of the investigation and trial. Pretty much right after the child's injuries, she talked to DCF, then DSS, and police. Then she testified in the grand jury in May and July of 2006. It wasn't until April 13, 2007, that the criminal complaints were issued. And then her trial testimony was consistent with her prior statements. If there are no further questions, I will rest on my brief. Thank you. There's no motive evidence on either side. Because you're not happy about a third child in the household does not explain why you would burn someone's vaginal and anal area and fracture their skull. The relationship between the sisters was described by the mother as not great, but getting better. It's the wife who, when it's called after the grandmother tells the mother that there's some injury to this child, won't answer the questions that are being asked by her own sister. There's no motive that differentiates either of these two people from each other. And there's no medical evidence that puts it before noon. I mean, only after noon. There is none. This is a guess that it's the father. Whatever reason the Commonwealth had for making this guess, it's just not in the record. And it's unreasonable to allow someone to do a life sentence based on a guess. Counsel, do we have all of the transcripts, the entire trial record from the state court proceeding here in federal court? I believe we have all the transcripts of witness testimony. What about investigatory reports, police reports, statements, to the extent that they were made part of the state court record? I believe I referenced the appendix from the district court. So I would like to ask you to check and make sure, not that you would ordinarily have to do this in every case. I'm asking this specifically for this case. We want everything from the state court trial. Everything that was filed, except to the extent that there were exhibits. We don't want those.